UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          **Plaintiff,**<br><br>-against-<br><br>SONGJIANG WANG (A/K/A SAM WANG),<br><br>          **Defendant.** | No. __ Civ. ____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendant Songjiang Wang (a/k/a Sam Wang) ("Wang") and alleges as follows:

## SUMMARY

1. This case concerns insider trading by Wang, a former Director of Statistical Programming at Merrimack Pharmaceuticals, Inc. ("Merrimack"). Wang tipped his close friend Schultz Chan ("Chan") with highly confidential information about the results of his employer's clinical drug trials, and Chan used those tips to trade in Merrimack securities in advance of Merrimack disclosing the drug trial results to the public. In addition to tipping material nonpublic information, Wang also received and traded based on tips that he received from Chan, who was then a Director of Biostatistics at Akebia Therapeutics, Inc. ("Akebia"). Wang used material nonpublic information that Chan provided about Akebia to generate over $108,000 in illegal profits by trading ahead of Akebia's announcement of positive drug trial results in September 2015 (the "Akebia Announcement").[1]

---

[1] On June 14, 2016, the Commission filed an enforcement action against Chan charging him with insider trading in Akebia securities. *SEC v. Chan*, No. 1:16-cv-11106-ADB (D. Mass.). That case is pending as of the filing of this Complaint.

## VIOLATIONS

2. By virtue of the conduct alleged herein, Wang engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

3. Unless Wang is permanently restrained and enjoined, he will again engage in the transactions, acts, practices, and courses of business set forth in this Complaint and in transactions, acts, practices, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

4. The Commission brings this action under the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]. The Commission seeks a final judgment permanently enjoining Wang from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint. The Commission also seeks a final judgment (a) requiring Wang to disgorge all ill-gotten gains from the unlawful insider trading activity as set forth in this Complaint, together with prejudgment interest; (b) ordering Wang to pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and (c) pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], barring Wang from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa].

6. Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the District of Massachusetts. Among other things, venue lies in this District because Wang resides within the District and executed his illegal insider trades from within this District. Merrimack also employed Wang at its headquarters in Massachusetts.

## DEFENDANT

7. **Wang**, age 55, currently resides in Massachusetts. During the relevant time, Wang was employed as a Director of Statistical Programing at Merrimack and had held other positions in the pharmaceutical industry. On July 10, 2018, Wang was convicted of securities fraud and conspiracy in a related criminal insider trading action. *See United States v. Chan and Wang*, 1:16-cr-10268-IT (D. Mass.) (the "Criminal Case"). The securities fraud counts on which Wang was convicted concerned his trading in Akebia securities based on Chan's tips and his tipping of Chan to trade in Merrimack securities. Wang is currently in the process of appealing his conviction.

## RELEVANT INDIVIDUAL AND ENTITIES

8. **Chan,** age 55, is currently incarcerated. Chan joined Akebia as a Director of Biostatistics in August 2015. At that time, Chan had almost twenty years of experience in the biopharmaceutical industry. He holds a doctorate in statistics and a doctorate in mathematical physics. On July 10, 2018, Chan was convicted of securities fraud and conspiracy in the Criminal Case. The securities fraud counts on which Chan was convicted concerned insider trading in Merrimack securities based on tips that he received from Wang and trading and tipping Wang to trade Akebia securities based on information that Chan obtained through his employment with Akebia. Chan is currently in the process of appealing his conviction.

9.  During the relevant time, **Akebia** was a Delaware corporation listed on the NASDAQ stock market, with a principal place of business in Cambridge, Massachusetts.

10. During the relevant time, **Merrimack** was a Delaware corporation listed on the NASDAQ stock market, with a principal place of business in Cambridge, Massachusetts.

## RELEVANT TRADING TERMS

11. A stock option, commonly referred to as an "option," gives its purchaser or holder the option to buy or sell shares of an underlying stock at a specified price (the "strike" price) prior to the expiration date. Options are generally sold in "contracts," which give the option holder the opportunity to buy or sell 100 shares of an underlying stock.

12. A "call" option gives the purchaser or holder of the option the right, but not the obligation, to purchase a security at a specified strike price within a specific time period. Generally, the buyer of a call option anticipates that the price of the underlying security will increase above the strike price before the option's expiration date.

13. A "put" option gives the purchaser or holder of the option the right, but not the obligation, to sell a security at a specified strike price within a specific time period. Generally, the seller of a put option anticipates that the price of the underlying security will not decrease below the strike price before the option's expiration date.

## FACTS

### A. Wang and Chan Were Close Personal Friends

14. At all relevant times, Wang and Chan were close friends who regularly talked by phone, exchanged text messages, and saw each other in person. During the work week, they often met for lunch, as they both worked in Cambridge, Massachusetts, within walking distance of each other.

15. During the course of their friendship, Wang provided sizable cash loans to Chan. In or around March 2015, Chan repaid Wang some or all of those loans.

**B.** **Wang's Insider Trading in Merrimack Securities**

16. At all relevant times, Merrimack was a biopharmaceutical company focused on development of drug candidates for the treatment of various types of cancers. Before a biopharmaceutical company like Merrimack can release a new drug, it must conduct clinical trials to determine whether the drug is effective in providing treatment to patients and safe.

17. Beginning in December 2011, Wang worked as a Director of Statistical Programming at Merrimack. In that role, Wang was responsible for, among other things, evaluating the results of clinical trials by conducting statistical analyses.

18. As Merrimack's employee, Wang owed a duty of trust or confidence to Merrimack and its shareholders. Wang was also subject to Merrimack's insider trading policy, which prohibited employees from trading the company's securities while in possession of material nonpublic information and from disclosing material nonpublic information to others.

19. As a result of his position at Merrimack, Wang had access to a restricted database that collected data about clinical trials being conducted as to the efficacy of the company's drug candidates.

20. Notwithstanding his duty to Merrimack and its shareholders, Wang tipped Chan with material nonpublic information about Merrimack's clinical trial results in advance of the company announcing positive drug trial results on at least three separate occasions in late 2013 and early 2014. Chan used this information to trade in Merrimack securities for a profit.

21. For example, in or about April 2014, Wang tipped Chan about the positive drug trial results for MM-398, one of Merrimack's drug candidates at that time, to trade in advance of the company's positive announcement about MM-398's drug trial results on May 1, 2014.

22. Wang received access to confidential drug trial results for MM-398 on or about the morning of Saturday, April 19, 2014.

23. At 9:30 a.m. on Monday, April 21, 2014, Chan placed an order to purchase 32,522 shares of Merrimack stock.

24. At 9:44 a.m. that morning, Merrimack's General Counsel sent Wang and other employees who had received the drug trial results an email reminding them of their obligations not to share the drug trial results.

25. On the afternoon of the following Friday, April 25, 2014, Wang and Chan had four telephone calls. Late the next morning, on Saturday, April 26, 2014, they had two phone calls. Early that afternoon, Wang received a draft of a Merrimack press release discussing the final drug trial results for MM-398. On the morning of Sunday, April 27, 2014, Wang and Chan had six phone calls.

26. At 11:51 a.m. on Monday, April 28, 2014, Chan purchased 5,740 shares of Merrimack stock.

27. Chan purchased Merrimack stock between April 21 and 28, 2014, while aware of, and on the basis of, material nonpublic information about the MM-398 drug trial that he had received from Wang.

28. Wang knew or was reckless in not knowing that the information he tipped to Chan was material and nonpublic, and that, by tipping Chan, Wang was breaching his duties to Merrimack and its shareholders.

29. On May 1, 2014, prior to market open, Merrimack announced clinical study results indicating that patients treated with MM-398 showed improved pancreatic cancer survival rate as compared to the control protocol. That day, Merrimack shares closed at $6.99, which was 59 percent higher than the previous day's closing price.

30. As a result of Chan's purchase of Merrimack stock between April 21 and April 28, 2014, he generated approximately $76,045 in profits as of the close of trading on May 1, 2014.

31. Wang also tipped Chan about positive announcements on November 26, 2013 and December 13, 2013 regarding Merrimack's drug trial candidates. On November 26, 2013, Merrimack announced positive clinical study results for MM-121, a drug candidate for the treatment of breast cancer. On December 13, 2013, Merrimack announced positive clinical study results for MM-302, another drug candidate for the treatment of breast cancer.

32. Chan purchased shares of Merrimack stock based on tips from Wang in advance of both of these announcements.

33. Wang disclosed confidential information about the MM-121 and MM-302 drug trials to Chan in breach of Wang's duties to Merrimack and its shareholders.

34. In both those instances, Wang knew or was reckless in not knowing that the information he tipped to Chan was material and nonpublic, and that, by tipping Chan, Wang was breaching his duties to Merrimack and its shareholders.

35. In total, Chan's illegal trading in Merrimack securities based on Wang's tips generated at least $245,203 in profits for Chan in 2013 and 2014.

C.  **Wang's Insider Trading in Akebia Securities**

36.  At all relevant times, Akebia was a biopharmaceutical company that developed treatments for patients with kidney disease. In or around 2015, one of Akebia's leading drug candidates was Vadadustat, a potential treatment for anemia caused by chronic kidney disease.

37.  On August 17, 2015, Chan joined Akebia as a Director of Biostatistics.

38.  As an employee of Akebia, Chan owed a duty of trust or confidence to Akebia and its shareholders. Chan also owed Akebia a duty to keep confidential material nonpublic information about Akebia's drug trials, as well as a duty to refrain from tipping this confidential information to others. On August 9, 2015, Chan signed a document acknowledging these duties. Chan also received a copy of Akebia's Insider Trading Policy, as well as an August 14, 2015 email from the company's General Counsel directing employees to not communicate publicly about Akebia and to refrain from discussing the upcoming Akebia Announcement with anyone outside of Akebia.

39.  On or before August 19, 2015 and continuing through the week of August 24, 2015, Chan participated in several internal Akebia meetings and conversations in which he gained access to material nonpublic information about positive drug trial results for Vadadustat, which was Akebia's then-leading drug candidate.

40.  In breach of his duties to Akebia and its shareholders, Chan intentionally or recklessly tipped material nonpublic information about the Vadadustat drug trial results to Wang.

41.  On Monday, August 24, 2015, Chan had at least five telephone calls with Wang, including two calls of over three minutes each. Chan also texted Wang that afternoon. Over the next three days, Chan and Wang had at least ten phone calls and exchanged at least eleven text

messages. On Friday, August 28, 2015, after receiving two calls from Chan earlier in the day, Wang purchased 20 Akebia call options and 3,000 shares of Akebia stock. Later that day, after receiving a text message from Chan, Wang also sold 20 Akebia put options.

42. Wang made additional purchases of Akebia stock the next week. On Monday, August 31, 2015, Wang purchased an additional 12,475 Akebia shares. On September 1, 2015, Wang purchased an additional 5,000 Akebia shares. On September 3, 2015, Chan and Wang spoke by telephone and exchanged text messages. The next day, September 4, 2015, Wang purchased an additional 2,965 Akebia shares.

43. Overall, between August 28 and September 4, 2015, Wang purchased 23,440 Akebia shares and 20 Akebia call options and sold 20 Akebia put options.

44. Wang made his purchases and sales of Akebia securities between August 28 and September 4, 2015, while aware of, and on the basis of, material nonpublic information about the Vadadustat drug trial results that he had received from Chan.

45. Chan knew or was reckless in not knowing that the information he tipped to Wang was material and nonpublic, and that, by tipping Wang, Chan was breaching his duties to Akebia and its shareholders.

46. Wang made his trades in Akebia securities between August 28 and September 4, 2015, alleged above, based on Chan's tips even though Wang knew or was reckless in not knowing that the information he had received from Chan was material and nonpublic, and even though Wang knew, should have known, was reckless in not knowing, or consciously avoided knowing that Chan's disclosure of the information to him was improper and violated Chan's duties to Akebia and its shareholders.

9

47.     After the market close on September 8, 2015, Akebia announced positive drug trial results, stating that Vadadustat "demonstrated a favorable safety profile with no drug-related serious adverse events and no deaths." On September 9, 2015, the day after the Akebia Announcement, Akebia's stock closed at $11.36, which represented an increase of approximately 45 percent over the pre-Akebia Announcement closing price.

48.     As a result of the post-Akebia Announcement increase in Akebia's stock price, the value of Wang's Akebia shares and call options increased by approximately $105,811, and Wang also realized a profit of approximately $2,200 on his pre-Akebia Announcement sale of Akebia put options, when those options expired worthless.

**D.     Wang's Conviction for Insider Trading in Akebia and Merrimack Securities**

49.     In February 2017, Wang was arrested by the FBI and charged with insider trading in Akebia and Merrimack securities and conspiracy to commit securities fraud. Chan was arrested by the FBI several months earlier, in June 2016, and also charged with insider trading in Akebia and Merrimack securities and conspiracy to commit securities fraud.

50.     On July 10, 2018, Wang and Chan were convicted of all charges in the Criminal Case.

51.     Wang's securities fraud conviction in the Criminal Case reflected his trading in Akebia securities based on Chan's tips in advance of the Akebia Announcement and his tipping of Chan to trade in Merrimack securities.

**E.     Tolling of the Statute of Limitations**

52.     Wang entered into agreements with the Commission staff that suspended the running of any statute of limitations regarding the conduct or claims alleged in this Complaint from March 4, 2019 through March 5, 2020. In this action, the Commission does not seek

monetary relief with respect to ill-gotten gains that may have been generated before March 4, 2014.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

53. Paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

54. By virtue of the foregoing, Wang, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly, with scienter: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

55. By reason of the conduct described in this Complaint, Wang directly or indirectly violated and, unless restrained and enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Wang and his respective agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## II.

Directing Wang to disgorge, with prejudgment interest, all ill-gotten gains from the conduct alleged in this Complaint pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)];

## III.

Directing Wang to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

## IV.

Barring Wang, pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)]; and

## V.

Granting such other and further relief as this Court may deem just and proper.

Dated: Boston, Massachusetts
December 20, 2019

/s/ David Oliwenstein
David Oliwenstein (NY Bar # 4681326)
Joseph G. Sansone
Simona Suh
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-1100 (telephone)

Martin F. Healey (BBO #227550)
Regional Trial Counsel

SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch Street, 23rd Floor
Boston, MA 02110-1424
(617) 573-8952 (telephone)